UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,         :
         :
        Plaintiff,        :
         :
vs.         :   Case No. 4:19-cv-02019
         :
WEST INN'S RESORT MOTEL LLC,         :
a Missouri limited liability company,         :
         :
        Defendant.        :
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, WEST INN'S RESORT MOTEL LLC, a Missouri limited liability company (sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.     Defendant's property, Days Inn, has an address of 130 Salt Lick Road, St. Peters, Missouri 63376, and is located in the County of St. Charles ("Days Inn").

3.     Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA, 42 U.S.C. 12181(7A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      The place of public accommodation that the Defendant owns, operates, leases or leases to is Days Inn.

7.      Days Inn is a place of public accommodation.

8.      Defendant is responsible for complying with the obligations of the ADA.

9.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

10.      Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

11.      Plaintiff Fred Nekouee has visited the St. Louis area near the Days Inn in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; September 2018; January 2019; and May 2019.

12.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Days Inn which forms the basis of this lawsuit where he checked in on January 27, 2019 and checked out on January 28, 2019.

13.   Fred Nekouee plans to return to the property to avail himself of the goods and services

2

offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area but he is deterred from doing so until the barriers to access are removed.

14.   When he was looking for a hotel during his May 2019 visit to the St. Louis area, Fred Nekouee looked at the outside of the Days Inn on May 14, 2019, but decided not to stay at the Days Inn again since the parking lot and outside conditions at the Days Inn had not changed from his previous stay.

15.   Fred Nekouee has definite plans to return to the St. Louis area in late September or early October 2019.

16.    The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the Days Inn near the heavy equipment dealerships he visits.

17.    For the reasons set forth in paragraphs 10 through 16 and 26 of this Complaint, Mr. Nekouee plans to return to the Days Inn.

18.    The Plaintiff has encountered architectural barriers at the subject property.

19.    The barriers to access that the Plaintiff encountered at the property have endangered his safety,   impaired his ability to access the property due to excessively steep slopes in the access aisle and a change of level of a walking surface, and have impaired his use of the restrooms in the lobby and in accessible guestroom 115, and his use of the accessible guestroom 115 in the Days Inn.

20.    The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

21.    The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

22.    Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair

and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

23.     On his visit to the Days Inn, the Plaintiff encountered an excessively steep cross slope in its access aisle and a change of level in a walking surface along the accessible route to the hotel entrance.

24.     In the parking lot, the cross slope of the access aisle serving the parking spaces for disabled patrons is steeper than 1:48.

25.     The Plaintiff encountered barriers to access the restrooms in the accessible rooms of the Days Inn.

26.     In the restroom in guestroom 115, only one grab bar is provided on the back wall of the bathtub.

27.     The Plaintiff is deterred from visiting the Days Inn, even though the Days Inn is close to the heavy equipment dealerships he visits in the area, because of the difficulties he will experience in the restrooms, lobby, hallway, fitness center, accessible room 115, parking lot, access aisle and walking surface until the property is made accessible to him in a wheelchair.

28.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 33 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

29.     Fred Nekouee desires to visit the Days Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property

without fear of discrimination.

30.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

31.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

32.     Preliminary inspections of the Days Inn have shown that violations and barriers to access exist there.

33.     The violations that Fred Nekouee personally encountered or observed on his visit to the Days Inn include, but are not limited to:

**PARKING AREA**

a.  (i) In the parking lot, there are no parking spaces for disabled individuals with signage with the words "van accessible."  (ii)  This lack of van accessible signage is in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6. (iii) The Plaintiff observed this lack of van accessible signage, and it deters him from visiting Days Inn.  (iv) The action required to install such signage is easily accomplishable and able to be carried out without much difficulty or expense.

b.  (i) In the parking lot, there is a change of level between the parking surface and the lobby entrance cement pad that is greater than 0.5 inches.  (ii) This change of level shown in the photographs below is greater than 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.  (iii) While moving in his wheelchair, the Plaintiff

encountered this change of level, and it stopped the forward progress of his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





c.   (i) In the parking lot, the cross slope of the access aisle serving the parking spaces for disabled patrons is steeper than 1:48.   (ii) The cross slope of this access aisle is steeper than 1:48, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this cross slope in this access aisle and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

**INTERIOR LOBBY AREA**

d.   (i) The top surface of the counters in the lobby are all higher above the floor than 36 inches.   (ii) The top surface of the counter in the lobby is higher than 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 904.4.1.   (iii) Due to its

height above the floor, the Plaintiff could not reach items on this counter from his wheelchair.  (iv) The action required to lower the counters in the lobby or to install a section of the counter that is no higher than 36 inches above the finish floor is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) In the lobby, the snack machine card reader is higher than 48 inches above the floor.  (ii) This snack machine card reader is about 65 inches above the finish floor and higher than 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor, the Plaintiff tried but could not reach this card reader to use the snack machine.  (iv) The action required to replace this machine is easily accomplishable and able to be carried out without much difficulty or expense.

f.   (i) In the lobby, the soda machine card reader is higher than 48 inches above the floor.  (ii) This soda machine card reader is about 65 inches above the finish floor and higher than 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor, the Plaintiff tried but could not reach this card reader to use the soda machine.  (iv) The action required to replace this soda machine is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN THE LOBBY**

g.  (i) The restroom in the lobby does not have signage with the international symbol of accessibility.  (ii) As shown in the photograph below, the restroom in the lobby does not have signage with the international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the

international symbol of accessibility, and it deters him from staying at the Days Inn.   (iv) The action required to install signage with the international symbol of accessibility on the outside of this lobby restroom is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The rear wall grab bar behind the toilet in the lobby restroom is less than 36 inches long.   (ii) As shown in the photograph below, this rear wall grab bar is only about 24 inches long and less than the minimum required length of 36 inches, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the short length of this rear wall grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet.   (iv) The action required to install a rear wall grab bar of proper length is easily accomplishable and able to be carried out without much difficulty or expense.



i.   (i)   In the lobby restroom, the sidewall grab bar for use of the toilet is less than 42 inches long.   (ii) This side wall grab bar is less than a minimum of 42 inches (1065 mm) long, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the placement and short length of this side wall grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet and back again.   (iv) The action required to install a side wall grab bar of proper length is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) In the lobby restroom, the side wall grab bar for use of the toilet extends less than 54 inches from the rear wall.   (ii) This side wall grab bar only extends about 39 inches from the rear wall and does not extend a minimum of 54 inches (1370 mm) from the rear

wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the placement and short length of this side wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to install a side wall grab bar of proper length and in the proper position from the rear wall is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) In the restroom in the lobby, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet or toilet, and toilet paper is not dispensed in this range, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of the toilet paper dispenser, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet. (iv) The action required to replace or relocate the toilet paper dispenser to achieve compliance is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) In the restroom in the lobby, the paper towel dispenser outlet is higher than 48 inches above the floor.   (ii) This paper towel dispenser is higher than 48 inches above the finish floor, and it is outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii)   From his wheelchair, the Plaintiff could not reach this paper towel dispenser outlet to release a paper towel.   (iv) The action required to relocate this paper towel dispenser to achieve compliance is easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) In the restroom in the lobby, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting

surface is about 46 inches above the finish floor and higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of the bottom edge of this mirror's reflecting surface above the floor the Plaintiff could not see his full face in the mirror while sitting in his wheelchair.   (iv) The action required to replace or to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) In the restroom in the lobby, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is installed at about 67 inches above the finish floor and higher than 48 inches above the finish floor, and it is outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) Fred Nekouee observed the height of this coat hook above the floor, and it deters him from visiting Days Inn.   (iv) The action required to adjust the height of this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

o.   (i) In the breakfast area, the coffee flask levers and cups are higher than 48 inches above the floor.   (ii) These coffee flask levers and cups are higher than 48 inches above the finish floor, where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff encountered this condition, and due to their height above the floor, the Plaintiff could not reach the lever to the coffee flask and the cups from his wheelchair.   (iv) The actions required to relocate the coffee flask and cups and to put a written policy in place so that they are placed within reach of an individual in a wheelchair are easily accomplishable and able to be carried out without much difficulty or expense.

p.    (i) In the breakfast area, the dispenser buttons on the juice machine are higher than 48 inches above the floor.   (ii) These dispenser buttons on the juice machine are about 54 inches above the finish floor and higher than 48 inches above the finish floor, where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2. (iii) The Plaintiff encountered this condition, and due to their height above the floor, the Plaintiff, from his wheelchair, could not serve himself juice.   (iv) The action required to relocate or replace the juice machine is easily accomplishable and able to be carried out without much difficulty or expense.

q.    (i) In the breakfast area, the top two shelves for bread and pastry are higher than 48 inches above the floor.   (ii) These shelves are higher than 48 inches above the finish floor, where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff encountered this condition, and due to their height above the floor, the Plaintiff, from his wheelchair, could not reach a donut.   (iv) The action required to relocate these shelves is easily accomplishable and able to be carried out without much difficulty or expense.

r.    (i) In the breakfast area, the paper towel dispenser outlet is higher than 48 inches above the floor.   (ii) This paper towel dispenser is higher than 48 inches above the finish floor, and it is outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii)   From his wheelchair, the Plaintiff could not reach this paper towel dispenser outlet to release a paper towel.   (iv) The action required to relocate this paper towel dispenser to achieve compliance is easily accomplishable and able to be carried out without much difficulty or expense.

13

**ACCESSIBLE GUESTROOM 115**

s.    (i) In guestroom 115, the security latch is higher than 48 inches above the floor.
(ii) In accessible guestroom, the security latch is higher than 48 inches above the finish
floor and outside of the reach range of an individual in a wheelchair, in violation of Federal
Law 2010, ADAAG § 308.2.   (iii) Due to the height of this security latch above the floor,
the Plaintiff could not reach it from his wheelchair.   (iv) The action required to relocate
this security latch is easily accomplishable and able to be carried out without much
difficulty or expense.

t.    (i) In guestroom 115, the shelf in the closet nook is higher than 48 inches above the
floor.   (ii) In accessible guestroom 115, the shelf in the closet nook is about 56 inches
above the finish floor and higher than 48 inches above the finish floor, in violation of
Federal Law 2010, ADAAG § 308.2.   (iii) Due to its height above the floor the Plaintiff
could not use this shelf.   (iv) The action required to relocate this shelf is easily
accomplishable and able to be carried out without much difficulty or expense.

u.    (i) In guestroom 115, to operate the control knob on the microwave requires tight
grasping, pinching, or twisting of the wrist.   (ii) The operation of the control knob on the
microwave requires tight grasping, pinching, or twisting of the wrist in violation of Federal
Law 2010, ADAAG § 309.4.   (iii) The Plaintiff could not operate the control knob on the
microwave with a closed fist or loose grip.   (iv) The action required to replace this knob
or microwave is easily accomplishable and able to be carried out without much difficulty
or expense.

v.    (i) In guestroom 115, a clear floor space of 30 inches by 48 inches in front of the
air conditioning control is not provided.   (ii) In accessible guestroom 115, a clear floor

space of 30 inches by 48 inches is not provided to allow a forward approach to the air conditioning controls, in violation of Federal Law 2010, ADAAG § 305.3.   (iii) Due to the lack of clear floor space in front of the air conditioning controls, the Plaintiff could not access the air conditioning controls in his wheelchair.   (iv) The action required to provide clear floor space in front of the air conditioning controls is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM OF ACCESSIBLE GUESTROOM 115**

w.   (i) In the restroom in guestroom 115, the removable in-tub seat is not capable of secure placement.   (ii) This removable in-tub seat is not capable of secure placement, in violation of Federal Law 2010, ADAAG § 610.2.   (iii) The Plaintiff could not secure this seat in the tub.   (iv) The action required to replace this bathtub seat is easily accomplishable and able to be carried out without much difficulty or expense

x.   (i)   In the restroom in guestroom 115, the top of the gripping surface of the lower grab bar on the back wall of the bathtub is not within 8 and 10 inches above the rim of the bathtub.   (ii) In the restroom in accessible guestroom 115, the top of the gripping surface of the lower grab bar on the back wall of the bathtub is about 17 inches above the rim of the tub and not within 8 inches (205 mm) minimum and 10 inches maximum (255 mm) above the trim of the bathtub, in violation of Federal Law 2010, ADAAG § 607.4.1.1.   (iii) Due to the height of top of the gripping surface of this lower grab bar, the Plaintiff required assistance to enter the bathtub.   (iv) The action required to relocate this grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

y.   (i) In the restroom in guestroom 115, the shower spray unit is higher than 48 inches above the floor of the bathtub.   (ii) This shower spray unit is located about 74 inches above

the floor of the bathtub and higher than 48 inches above the floor of the bathtub, in violation of Federal Law 2010, ADAAG §§ 308.2 and 608.6.   (iii) The Plaintiff observed the height of this shower spray unit above the floor of the bathtub, and it deters him from staying at Days Inn.   (iv) The action required to install an adjustable shower spray unit with a hose is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) In the restroom in guestroom 115, the shower spray unit for the bathtub does not have a hose.   (ii) This shower spray unit does not have a hose that can be used as a fixed-position shower head and as a hand-held shower spray unit, in violation of Federal Law 2010, ADAAG § 607.6.   (iii) Because it was not adjustable and did not have a hose, the Plaintiff could not reach or use this shower spray unit on his own.   (iv) The action required to replace this shower spray unit with one that has a hose is easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) In the restroom in guestroom 115, the bathtub control valve is not located between the centerline and the open side of the bathtub.   (ii) This condition is in violation of Federal Law 2010, ADAAG §§ 607.5 and 608.5.   (iii) Due to the location of the control valve for the bathtub, the Plaintiff could not reach the control valve from outside of the tub while sitting in his wheelchair.   (iv) The action required to relocate the control valve for this bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In the restroom in guestroom 115, only one grab bar is provided on the back wall of the bathtub.   (ii) On the back wall of this bathtub two grab bars are not provided, in violation of Federal Law 2010, ADAAG §§ 607.4.1, 607.4.1.1, and 607.4.2.   (iii) Due to the lack of a second grab bar on the back wall of the bathtub, the Plaintiff required

assistance to bathe.   (iv) The action required to install a second grab bar on the back wall of the bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the restroom in guestroom 115, the rear wall grab bar behind the toilet is less than 36 inches long.   (ii) As shown in the photograph below, this rear wall grab bar is only about 24 inches along and is less than 36 inches long, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to its short length, the Plaintiff had difficulty using this rear wall grab bar to transfer himself from his wheelchair to the toilet.   (iv) The action required to install a grab bar of proper length is easily accomplishable and able to be carried out without much difficulty or expense.



dd.   (i) In the restroom in guestroom 115, the side wall grab bar for the toilet does not extend at least 54 inches from the rear wall.   (ii) In the restroom in accessible guestroom 115, the side wall grab bar for the toilet only extends about 40 inches from the rear wall

and does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to tis lack of extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to install a side wall grab bar that extends at least 54 inches from the rear wall is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) The side wall grab bar for the toilet in the restroom of guestroom 115 is less than 42 inches long.   (ii) This side wall grab bar is only about 36 inches long and is less than 42 inches long, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the length of this side wall grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar with a grab bar of adequate length is easily accomplishable and able to be carried out without much difficult y ore expense.

ff.   (i) In the restroom in accessible guestroom 115, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the water closet or toilet.   (ii) The centerline of the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) The Plaintiff tried but could not reach this toilet paper dispenser from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

gg. (i)   In the restroom of guestroom 115, the toilet stall width is less than 60 inches. (ii) The width of this toilet stall in accessible guestroom 115 is about 36 inches wide and

less than 60 inches wide, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.
(iii) Due to the lack of width of this toilet stall, the Plaintiff had difficulty flushing the toilet
and transferring to and from the toilet.

**HALLWAY**

hh.   (i) In the first floor hallway of Days Inn, the operation of the door lock requires
tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this door lock
requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010,
ADAAG §§ 309.4 and 404.2.7.   (iii)   The Plaintiff tried but could not operate this door
lock with a closed fist or loose grip.   (iv) The action required to replace this door lock in
the hallway is easily accomplishable and able to be carried out without much difficulty or
expense.

**FITNESS CENTER**

ii.  (i) In the fitness center, the clear floor space between the cycling and treadmill
machines is less than 30 inches.   (ii) This lack of clear floor space is in violation of Federal
Law 2010, ADAAG § 305.   (iii) The Plaintiff observed this lack of clear floor space, and
it deters him from staying at Days Inn.   (iv) The action required to create and maintain
adequate clear floor space between exercise equipment is easily accomplishable and able
to be carried out without much difficulty or expense.

jj.   (i) In the fitness center, the clear floor space between the wall and the treadmill is
less than 30 inches.   (ii) This lack of clear floor space prevents an individual in a
wheelchair from accessing the medicine balls and is in violation of Federal Law 2010,
ADAAG § 305.   (iii) The Plaintiff observed this lack of clear floor space, and it deters him
from staying at Days Inn.   (iv) The action required to create and maintain adequate clear

floor space is easily accomplishable and able to be carried out without much difficulty or expense.

kk.   (i) In the fitness center, the handle of the wall-mounted phone is higher than 48 inches above the floor.   (ii) The handle of this wall-mounted phone is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff observed the height of this phone's handle above the floor, and it deters him from staying at Days Inn.   (iv) The action required to relocate this phone is easily accomplishable and able to be carried out without much difficulty or expense.

ll.   (i) In the fitness center, the towel rack is higher than 48 inches above the floor. (ii) This towel rack is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2. (iii) The Plaintiff observed the height of this towel rack above the floor, and it deters him from staying at Days Inn.   (iv) The action required to relocate this towel rack is easily accomplishable and able to be carried out without much difficulty or expense.

mm.        (i) In the fitness center, the coat hooks are higher than 48 inches above the floor.   (ii) These coat hooks are about 64 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff observed the height of these coat hooks above the floor, and it deters him from staying at Days Inn.   (iv) The action required to relocate these coat hooks is easily accomplishable and able to be carried out without much difficulty or expense.

nn.   (i) In the fitness center, the dispenser outlet for the sanitary wipe container is higher than 48 inches above the floor.   (ii) The dispenser outlet for this sanitary wipe

container is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff observed the height of this dispenser outlet above the floor, and it deters him from staying at Days Inn.

34.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

35.     The discriminatory violations described in paragraph 33 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

36.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

37.     Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to

discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

38.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

39.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

40.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

41.     Notice to Defendant is not required as a result of the Defendant's failure to cure the

violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

42.   Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Days Inn and adjacent parking lot spaces, access aisles and walkways, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.   The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.   Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*